UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

IN RE:
LYNETTE TAWANA NICHOLS

GOD'S UNIVERSAL KINGDOM
CHRISTIAN CHURCH, INC.,

    Appellant,

    v.

CHERYL E. ROSE, Trustee,

    Appellee.

Civil Action No. TDC-14-0625

## MEMORANDUM OPINION

This matter is before the Court on a Motion for Leave to Appeal from an Order of the United States Bankruptcy Court for the District of Maryland in *Rose v. God's Universal Kingdom Christian Church, Inc.*, Adversary Proceeding Number 13-00499 PM, denying the Motion to Dismiss the Complaint filed by God's Universal Kingdom Christian Church, Inc. ("the Church"). The issue before the Court is whether the Church should be granted leave to appeal from an interlocutory order. Having reviewed the pleadings and supporting documents, the Court finds no hearing necessary. *See* Local Rule 105.6 (D. Md. 2014). For the following reasons, the Church's Motion for Leave to Appeal is DENIED.

## BACKGROUND[1]

On January 2, 2013, Debtor Lynette Tawana Nichols ("Nichols"), the Resident Agent and President of the Church, filed a voluntary petition of relief under Chapter 7 of the United States Bankruptcy Code. In Schedule F of the Debtor's Bankruptcy Schedules in the Nichols Bankruptcy, Nichols listed the Church as having an "unsecured non-priority contingent, unliquidated, and disputed claim for an unspecified amount." Am. Compl. ¶¶ 19-20. The Church itself had filed a voluntary petition of relief under Chapter 11 of the United States Bankruptcy Code on October 16, 2012, which was dismissed on May 31, 2013.

On August 28, 2013, Cheryl E. Rose, the Chapter 7 Trustee for the Bankruptcy Estate of Lynette Tawana Nichols (the "Trustee"), filed a Complaint, DE No. 1, to recover transfers of payment by Nichols to the Church. In the Complaint, the Trustee pled that some of Nichols's charitable contributions to the Church were fraudulent conveyances and therefore avoidable. Specifically, the Trustee alleged that Nichols made charitable contributions of $62,653 in 2011 and $31,138 in 2010 to the Church. By contrast, Nichols's contributions to the Church prior to 2010 were for much smaller amounts: $3,140 in 2009 and $16,896 in 2008. The Trustee also pled that Nichols contributed an unspecified amount in 2012, which was not yet determinable because the Trustee had not seen Nichols's 2012 tax returns.

The Trustee alleged that Nichols's 2011 and 2012 payments to the Church were fraudulent conveyances under 11 U.S.C. § 548(a)(1)(A) (Count I) and 11 U.S.C. 548(a)(1)(B) (Count II). The Trustee also alleged a claim that the 2010, 2011, and 2012 payments were all fraudulent conveyances under Md. Code Ann. Commercial Law § 15-204, 205, & 207, which the Trustee had standing to bring under 11 U.S.C. § 544 (Count III), and that the amount of the

---

[1] Unless otherwise noted, the following facts are taken from the First Amended Complaint to Avoid and Recover Preferential Transfer and Fraudulent Conveyance (the "Amended Complaint"), Bankruptcy Court Docket Entry ("DE") No. 15.

payments should be avoided and turned over to the Trustee under 11 U.S.C. § 550 (Count IV). The Trustee further alleged that any payments made in 2012 were avoidable under 11 U.S.C. § 547 (Count V).

On October 7, 2013, the Church filed a Motion to Dismiss Complaint, DE No. 11, arguing that the Trustee's claims were barred by the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb – 2000bb-4 (1993) and the First Amendment to the United States Constitution, because allowing the Trustee to recover Nichols's 2010, 2011, and 2012 charitable contributions to the Church did not advance a compelling government interest and would substantially burden Nichols's free exercise of religion.

On October 23, 2013, the Trustee filed an Opposition to Defendant's Motion to Dismiss, DE No. 14, along with the Amended Complaint, which contained no additional or amended factual allegations, but pled an additional claim that the 2011 and 2012 payments were also fraudulent under 11 U.S.C. § 548(a)(2) (Count VI), because they exceeded 15 percent of Nichols's gross annual income and therefore were not protected as religious tithes.

On January 27, 2014, the United States Bankruptcy Court for the District of Maryland denied the Church's Motion to Dismiss, reasoning that the "dichotomy established by Congress" in the Bankruptcy Code through the enactment of the Religious Liberty and Charitable Donation Act of 1998 ("RLCDA"), Pub. L. No. 105-183, 112 Stat. 517, had already created built-in protections for the religious practice of tithing, and that the fraudulent conveyance provisions of the Code, along with the other provisions, are "generally applicable and do not target religious practices." Mem. Order 3-4, DE No. 26.

On March 3, 2013, the Church filed a Motion for Leave to Appeal from the bankruptcy court's order denying its Motion to Dismiss. ECF No. 1.

## DISCUSSION

Under 28 U.S.C. § 158(a), district courts have jurisdiction to hear bankruptcy appeals:

(1) from final judgments, orders, and decrees;
(2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and
(3) with leave of the court, from other interlocutory orders and decrees[.]

*Id.* A denial of a motion to dismiss is an interlocutory order, and therefore only appealable with leave of the court. *In re Travelstead*, 250 B.R. 862, 865 (D. Md. 2000). A district court should grant leave to appeal from an interlocutory bankruptcy order only where the appellant has demonstrated that "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *In re Rood*, 426 B.R. 538, 548 (D. Md. 2010) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)).

Thus, district courts considering a motion for leave to appeal employ an analysis similar to that applied by circuit courts of appeals certifying interlocutory reviews under 28 U.S.C. § 1292(b). *Rood*, 426 B.R. at 548. The motion may be granted only when: "(1) the order involves a controlling question of law, (2) as to which there is substantial ground for a difference of opinion, and (3) immediate appeal would materially advance the termination of the litigation." *Id.* (quoting *Atlantic Textile Group, Inc. v. Neal*, 191 B.R. 652, 653 (E.D. Va. 1996)). If any of these three elements is unsatisfied, leave to appeal is to be denied. *Id.*

Here, the Church states in its motion that:

The questions sought to be resolved [on appeal] are:

A. Whether the Religious Freedom Restoration Act (42 U.S.C. §[§] 200[0]bb – 2000[bb]-4) bars the Plaintiff [Trustee]'s claims against the Defendant [Church].
B. Whether the donation practices of the Debtor are consistent with 11 U.S.C. § 548(a)(2) thereby barring the Plaintiff's claims against the Defendant.

Mot. Leave Appeal ¶ 3. Neither the bankruptcy court's Order nor the Church's original Motion to Dismiss, however, contain any discussion of whether Nichols's donation practices are consistent with § 548(a)(2). Because the bankruptcy court has not ruled on this issue, the Court does not have jurisdiction to grant leave and consider this second issue on appeal. *See* 28 U.S.C. § 158(a). Accordingly, the only remaining issue is whether to grant leave to appeal on the question whether RFRA bars the Trustee's claims.

## I. Controlling Question of Law

RFRA prohibits the government from substantially burdening a person's exercise of religion, even if the burden results from a rule of general applicability, unless it is in furtherance of a compelling government interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000bb-1. The question whether the application of the fraudulent conveyance provisions of the Bankruptcy Code and the Maryland Code would violate RFRA is a question of law. *See United States v. Vasquez-Ramos*, 531 F.3d 987, 990 (9th Cir. 2008) ("Whether application of a federal law violates RFRA is a question of statutory construction for the court, not a question of fact."). "An order involves a controlling question of law when either (1) reversal of the bankruptcy court's order would terminate the action, or (2) determination of the issue on appeal would materially affect the outcome of the litigation." *Travelstead*, 250 B.R. at 865-66. Here, reversal on this issue would terminate the action because it would dismiss all of the Trustee's claims. Thus, the first prong is satisfied.

## II. Substantial Ground for a Difference of Opinion

Although the RFRA issue is a controlling question of law, it is not a question of law as to which there is substantial ground for a difference of opinion. Such a ground exists "only if a difference of opinion exists *between courts* on a given controlling question of law, creating the

need for interlocutory appeal to resolve the split or clarify the law." *KPMG Peat Marwick, LLP v. Estate of Nelco, Ltd.*, 250 B.R. 74, 82 (E.D. Va. 2000) (emphasis in original). In other words, for interlocutory appeals, "it matters not whether the lower court simply got the law wrong," but "whether courts themselves disagree as to what the law is." *Id.* at 83.

Here, there appears to be no substantial burden on the exercise that would support a conclusion that RFRA bars claims such as those asserted by the Trustee. As the bankruptcy court notes in its order, in 1998 Congress enacted the RLCDA for the very purpose of protecting religious tithes under the Bankruptcy Code. Mem. Order 3 n.1. Specifically, Congress sought to clear confusion among courts regarding the effect of RFRA on the Code by creating a "safe harbor" provision in 11 U.S.C. § 548(a)(2) to protect the good faith tithes of individual debtors and provide religious organizations with a defense against bankruptcy trustees challenging these good faith charitable gifts as fraudulent transfers. *See H.R. Rep. No.* 105-556, at 2-5 (1998). Fraudulent transfers made with actual intent to hinder, delay, and defraud creditors, such as those that fall under § 548(a)(1)(A), are not protected by the RLCDA amendments. Under the § 548(a)(2) safe harbor provision, however, contributions to qualified religious or charitable organizations cannot be construed as "constructive fraudulent transfers" under § 548(a)(1)(B) where they either do not exceed 15 percent of the debtor's gross annual income for the year in which the transfer of the contribution is made, or if the contribution exceeds 15 percent of the debtor's gross annual income, where "the transfer was consistent with the practices of the debtor in making charitable contributions." 11 U.S.C. § 548(a)(2). Thus, the law does not prevent a debtor from contributing to a religious institution an amount typical of her past contributions to that institution.

In the wake of the RLCDA, to the extent that there is case law addressing the application of the fraudulent conveyance provisions of the Bankruptcy Code to religious contributions, it provides no indication that courts have found such application to violate RFRA. For example, in *In re McGough*, 737 F.3d 1268 (10th Cir. 2013), the court was faced with similar §§ 548(a)(1)(B) and 550 claims by a trustee against a religious organization. The court considered only the narrow issue of whether the trustee could avoid under § 548(a)(2) the debtor's entire annual transfer to religious organization or only the portion exceeding 15 percent of the debtor's gross annual income, but otherwise had no issue with the fraudulent conveyance claims. *Id.* at 1272. Although the court declined to address the argument, raised in an amicus brief, that avoidance of the entire amount of a charitable contribution when it exceeded 15 percent of gross annual income violated RFRA, it noted *in dicta* that § 548(a)(2) "does not burden, let alone substantially burden, legitimate tithing" because it "does not prevent a debtor from all tithing," but rather "merely allows a trustee to seek to recover large contributions that are inconsistent with the debtor's past practices." *Id.* at 1277 n.8.

Similarly, in *Universal Church v. Geltzer*, 463 F.3d 218 (2d Cir. 2006), the court considered another narrow issue, holding that the 15 percent safe harbor provision in § 548(a)(2) is to be applied to a debtor's aggregate annual contributions, as opposed to each individual contribution, but otherwise had no issue permitting fraudulent conveyance claims against a religious organization. *Id.* at 221-26. Notably, in *Universal Church*, the Second Circuit expressly held that allowing the trustee to avoid religious contributions did not violate the Free Exercise or Establishment Clauses of the First Amendment because the charitable contribution provisions of the Bankruptcy Code are generally applicable and religion-neutral. *Id.* at 227-28.

The Church has identified no case law indicating that avoidance of religious contributions under this framework violates RFRA. Rather, the Church's only argument is that the Court should grant leave to appeal "as a matter of judicial economy," and that "[i]t is clear that this Honorable [Bankruptcy] Court has made its final decision with regard to these issues and therefore an appeal at this time, if successful, may limit time and expenses related to this litigation." Mot. Leave Appeal ¶ 4. The Court concludes that the RFRA question does not meet the requirement that a substantial ground for a difference of opinion exist on the issue.

Because the RFRA question does not satisfy this second prong, the Court does not need to consider the third requirement, that an immediate appeal would materially advance the termination of the litigation. Accordingly, the Court concludes that the bankruptcy court's Order is not appropriate for interlocutory review.

## CONCLUSION

For the foregoing reasons, the Church's Motion for Leave to Appeal is DENIED. A separate Order follows.

Date: August 15, 2014

THEODORE D. CHUANG
United States District Judge